UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARVIN ALLEN,

   Petitioner,

v.            Case No. 2:10-cv-365
            HON. ROBERT HOLMES BELL
MITCHELL PERRY,

   Respondent.

_____/

## REPORT AND RECOMMENDATION

   Petitioner Marvin Allen filed this petition for writ of habeas corpus challenging his convictions of first degree murder, assault with intent to commit murder, felon in possession of a weapon, carrying a concealed weapon, and three counts of possession of a firearm during the commission of a felony.   Petitioner was sentenced as a fourth habitual offender to terms of life for his murder conviction, 40 to 60 years for his assault with intent to murder conviction, 6 to 30 years for his felon in possession conviction, 6 to 30 years for his carrying a concealed weapon conviction, and 2 years on each of his felony firearm convictions.

   Petitioner was convicted of killing Cornelle Mason and injuring William Palm on August 6, 2006, in front of a large crowd of witnesses outside a store.   Witnesses testified that Petitioner was the only individual with a firearm at the scene of the crime, was shooting his firearm at the time Mason was killed and at the time Palm was injured, and was seen as the lone occupant inside the vehicle where the shooter was located at the time Cornelle Mason was shot.   Petitioner claims that a number of constitutional errors occurred during his trial.   The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner alleges that:

I.  Mr. Allen was denied his state and federal constitutional right to a fair trial when the prosecutor engaged in misconduct by evoking sympathy for the victim, using impeachment evidence as substantive evidence of guilt, and vouching for the credibility of the investigation.

II.  Trial counsel was ineffective in failing to object to prosecutorial misconduct.

III.  Where Mr. Allen presented evidence that he acted in self-defense and in defense of his brother with regard to the assault with intent to murder charge, he was denied due process and the constitutional right to present a defense when the trial court refused to instruct the jury in accordance with those defenses.

IV.  The trial court abused its discretion and denied Mr. Allen a fair trial by refusing to give the requested instruction on voluntary manslaughter.

V.  Mr. Allen is entitled to a remand for an evidentiary hearing and a new trial where there is newly discovered evidence that is material and relevant to the charges.

VI.  Defendant's counsel on appeal was constitutionally ineffective for failing to investigate the law and facts of his case prior to submitting defendant's direct appeal.

VII.   Defendant was denied effective assistance of counsel as guaranteed him by the Sixth Amendment when defense counsel failed to object to the prosecutor's misconduct; adequately present available defenses; failed to perform adequate investigation of law and facts; and, failed to perform adequate cross-examination.

VIII.  Defendant was denied effective assistance of counsel, due process, a fair trial, confrontation of State's proofs by the actions of the prosecutor, all rights guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and similar rights guaranteed under Michigan's Constitution.

IX.  The trial court failed to insure that defendant received a fair trial, allowing the State to present inadmissible, irrelevant, highly prejudicial evidence before the jury, violating defendant's due process, fair trial and other rights guaranteed under both Michigan and United States Constitution.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

This case was stayed on November 27, 2011, to allow Petitioner to exhaust additional issues that he wanted to raise in the petition. See Docket #12. Respondent has asserted that the new claims in the amended petition are barred by the statute of limitations period. Respondent argues that the new claims are time barred because the limitations period had run before Petitioner filed his new claims in this court, and the limitations period was not tolled. Respondent concedes that the original petition was timely. Respondent argues, however, that Petitioner's new claims in his

- 4 -

amended petition do not relate back to the original claims citing *Mayle v. Felix*, 545 U.S. 644 (2005), for the proposition that an amended complaint filed in a federal habeas proceeding that adds new claims that do not arise out of the same conduct, transaction or occurrence will not relate back to the original petition filing date for statute of limitations purposes.  In this case, however, the court stayed the action specifically for the purpose of allowing Petitioner to exhaust his previously unexhausted claims and to amend his petition to raise the claims once they were exhausted, unlike in *Mayle,* where no motion to stay the petition was ever filed.  It would be completely unfair to disallow Petitioner's reliance on the court order in this case which instructed him to file an amended petition after he exhausted his claims in the state courts.

The one year statute of limitation period began to run on December 28, 2009, because the Michigan Supreme Court denied Petitioner's application for leave to appeal on September 28, 2009, and the time for seeking review of that denial in the United States Supreme Court expired 90 days later on December 27, 2009.  The original petition was signed on December 27, 2010, and filed on December 29, 2010.  The court stayed the case on November 27, 2011, in order for Petitioner to pursue unexhausted claims. The court specifically allowed Petitioner to amend his petition to include the subsequently exhausted claims.  The Amended Petition was filed by order of this court on May 8, 2014.  This case was reopened on that date.  Because the court specifically provided for Petitioner's actions in this case, Respondent's argument must fail.  This is no longer an issue in the case and Respondent's focus should be on the merits of these claims.

Petitioner alleges that prosecutorial misconduct occurred during his trial when the prosecutor appealed to the sympathy of the jury by making statements about the victim, by using impeachment evidence, and by vouching for the credibility of the police investigation.  Respondent argues that Petitioner procedurally defaulted his claims by not objecting to the prosecutor's

arguments.  The Michigan Court of Appeals limited review of these issues to plain error affecting Petitioner's substantial rights.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is

more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

After expressly noting Petitioner's default in failing to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none.  In this circuit, "plain error review does not constitute a waiver of state procedural default rules."  *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also  Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at **3-4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").  In the opinion of the undersigned, Petitioner procedurally defaulted his prosecutorial misconduct claims.  Further, Petitioner has failed to overcome his procedural default by showing cause for his procedural default and prejudice.  In rejecting Petitioner's claims the Michigan Court of Appeals concluded:

### B.  Appeal To Jury Sympathy

> Allen argues that the prosecutor improperly appealed to the jury to sympathize for the deceased victim by commenting that he was an innocent victim who left Chicago and went to Kalamazoo to go to college and find a job to make his family proud. 'A prosecutor may not appeal to the jury to sympathize with the victim.'  The prosecutor concedes that the challenged remarks were 'unwarranted.' but argues that they did not deny Allen a fair trial.  We agree.  We will find no error requiring reversal if a timely instruction could have cured the prejudicial effect of the prosecutor's comments.  Here, to the extent that the prosecutor's remarks improperly evoked sympathy for the victim, the trial court specifically instructed the jury that sympathy must not play a part in its deliberations.  The trial court's instruction

was sufficient to protect Allen's substantial rights.  Therefore, we will not reverse on this ground.

### C.  Arguing Improper Evidence

Allen also argues that the prosecutor improperly argued impeachment evidence as substantive evidence of Allen's guilt.  We disagree. When we view the prosecutor's argument in context, the prosecutor did not directly argue the witness's prior statements as substantive evidence.  Rather, the prosecutor urged the jury to consider the witness's previous statements and her trial testimony in light of the 'code of silence' (that is. 'What happens in the streets stays in the streets"), which several witnesses recognized.  The prosecutor suggested that limitations the witness imposed on her testimony in keeping with that code were a factor in the changes in her statements. A prosecutor may draw inferences from the testimony and may argue that a witness's testimony is not worthy of belief.  Thus, we find no plain error. Further, the trial court protected Allen's substantial rights by specifically instructing the jury on the limited use of prior inconsistent statements.  We presume that the jury followed the court's instruction.

### D.  Vouching For Witness Credibility

Allen also argues that the prosecutor improperly vouched for the credibility of the police investigation.  Although the prosecutor has wide latitude to argue the evidence and its inferences, the prosecutor may not put the prestige of the police behind a contention that a defendant is guilty.  When we view the prosecutor's argument in context, the prosecutor was arguing that the police investigation was thorough and, therefore, its results were reliable.  To the extent that the prosecutor's remarks might have been improper, an appropriate instruction, if Allen had requested one, could have cured any error. The principal issues at trial involved Allen's identification as the shooter and his intent, and these issues depended largely on the eyewitness testimony, not the police investigation. For these reasons, we reject Allen's argument that misconduct by the prosecutor requires a new trial.

Michigan Court of Appeals decision, January 22, 2009, at 2-3, docket #23-13 (citations omitted).

The scope of review in a habeas corpus action of prosecutorial misconduct is narrow.

A petitioner must do more than show erroneous conduct.  "The relevant question is whether the

prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)), *cert. denied*, 114 S. Ct. 1317 (1994). Consequently, the giving of cautionary instructions is relevant to determining whether fundamental fairness was denied. *Id.* at 1356. In the opinion of the undersigned, Petitioner has failed to show that the Michigan Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutor's statements. This claim was rejected by the Michigan Court of Appeals.

> Because we have concluded that the prosecutor's remarks were either not improper or not prejudicial, Allen cannot establish that the defense counsel's failure to object prejudiced him. Further, the defense counsel addressed each of the challenged subject matters in her own closing argument. Counsel's decision to address the issues in her own closing argument, rather than object to the prosecutor's argument and possibly create an impression that Allen had something to hide, was a matter of trial strategy and Allen has not overcome the

- 9 -

presumption of sound strategy.  The fact that the strategy may not
have worked does not constitute ineffective assistance of counsel.

Michigan Court of Appeals decision, January 22, 2009, at 3-4, docket #23-13 (citations omitted).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  In the opinion of the undersigned, Petitioner cannot establish that his counsel constitutionally erred by failing to object to the prosecutor's statements. Most importantly, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the trial court abused its discretion by failing to give an instruction on voluntary manslaughter and on self-defense on the assault with intent to murder charge. The Michigan Court of Appeals rejected these claims:

### B. Failure To Instruct On Self-defense And Defense Of Others

'In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm.' A person is also allowed to use deadly force in defense of another. '[T]he touchstone of *any* claim of self-defense, as a justification for homicide, is *necessity*.' In this case, although the evidence indicated that Allen came to the aid of his brother, who was involved in a fight with Palm, the fight ended before the shooting of either of the victims. According to the witnesses, Palm was running away from the scene, with Allen chasing him, when he was shot. Additionally, Cornelle Mason, who was not involved in the fight, was attempting to drive away when he was shot. Because the evidence did not support a finding that Allen could have honestly and reasonably believed that either he or his brother were in imminent danger when he fired the shots, the trial court did not abuse its discretion in denying Allen's request for the instructions on self-defense and defense of others.

### C. Failure To Instruct On Voluntary Manslaughter

Voluntary manslaughter is a necessarily included lesser offense of murder. Therefore, an instruction on manslaughter would have been required upon request if supported by a rational view of the evidence. Manslaughter is an intentional killing, in the heat of passion, caused by an adequate provocation, and 'there cannot be a lapse of time during which a reasonable person could control his passions.' We agree with the trial court that a rational view of the evidence did not support a manslaughter instruction. Therefore, the trial court did not err by refusing to instruct on manslaughter. Furthermore, the trial court also instructed the jury on second-degree murder as a lesser offense, but the jury instead convicted Allen on the higher offense of first-degree murder. Given the jury's refusal to either acquit or

convict Allen of the lesser offense of second-degree murder, any error
in failing to instruct on manslaughter was harmless.

Michigan Court of Appeals decision, January 22, 2009, at 4-5, docket #23-13 (citations omitted).

Typically, a claim that a trial court gave an improper jury instruction is not cognizable

on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire

trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155

(1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not

serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny

due process of law"); *Rashad v. Lafler*, No. 09-2371, slip op. at 7 (6th Cir. Apr. 5, 2012) (same);

*Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he

fails to show that the jury instructions were contrary to federal law. *Id.*

Petitioner is entitled to a jury instruction as to any recognized defense for which there

exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*,

485 U.S. 58, 63 (1988). "The failure to give a requested self-defense instruction, however, does not

deprive the defendant of his constitutional right to due process if the evidence produced during trial

was insufficient to warrant such an instruction." *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988).

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death

sentence was unconstitutional where the jury was never instructed on a lesser included noncapital

offense where the evidence supported such a verdict. The Court concluded:

> While we have never held that a defendant is entitled to a lesser
> included offense instruction as a matter of due process, the nearly
> universal acceptance of the rule in both state and federal courts
> establishes the value to the defendant of this procedural safeguard.
> That safeguard would seem to be especially important in a case such
> as this. For when the evidence unquestionably establishes that the
> defendant is guilty of a serious, violent offense - - but leaves some
> doubt with respect to an element that would justify conviction of a

> capital offense - - the failure to give the jury the "third option" of
> convicting on a lesser included offense would seem inevitably to
> enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life
> is at stake.   As we have often stated there is a significant
> constitutional difference between the death penalty and lesser
> punishments.

*Id.* at 637.  The Supreme Court left open the question whether the Due Process Clause is violated

when a lesser included offense is omitted from jury consideration in a noncapital case.  *Id.* at 638

n. 14.  The Sixth Circuit has held that the failure to instruct on a lessor included offense in a

noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or

an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894

F.2d 792, 797 (6th Cir. 1990); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002).

In the opinion of the undersigned, the Michigan Court of Appeals correctly found that

the evidence did not support instructions on self-defense or voluntary manslaughter, and Petitioner

has not supported his due process claims.  The Michigan Court of Appeals' decision did not result

in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or result in a decision that was

based upon an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.

Petitioner argues that he is entitled to a remand to the state trial court for an

evidentiary hearing and new trial based on newly discovered evidence.  Petitioner raised this claim

in the state courts solely based on a violation of his state law rights.  This claim was rejected by the

Michigan Court of Appeals.

## V.  Newly Discovered Evidence

- 13 -

A. Standard of Review

In a supplemental brief that he filed in propria persona, Allen argues that he is entitled to a new trial or remand for an evidentiary hearing because of newly discovered evidence. As explained in *People v. Cress*,

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial.

B. Applying the *Cress* Standards

Here, the allegedly newly discovered evidence is an unsigned letter that Allen contends that Palm, one of the shooting victims, wrote. But, contrary to Allen's argument, the letter contains no clear indiction that its author was also armed on the night of the offense. Rather, the letter clearly refers to Allen as the shooter. And, even if Palm wrote the letter, its contents do not provide a reasonable basis for concluding that a different result would be probable on retrial. Accordingly, the discovery of this letter warrants neither a new trial nor a remand for an evidentiary hearing.

Michigan Court of Appeals decision, January 22, 2009, at 5, docket #23-13 (citations omitted).

Generally, habeas corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, RULES GOVERNING § 2254 CASES IN THE DISTRICT COURT. Where the issue was adjudicated on the merits in the state court proceedings, the Supreme Court has held that federal habeas corpus "review under § 2254(d)(1) is limited to the record that was before the state court . . . ." *Pinholster*, 131 S. Ct. at 1398. In such circumstances, a federal habeas court is barred from holding an evidentiary hearing. *Id.* The Michigan courts have already decided this issue, so a remand for an evidentiary hearing is not necessary. Moreover, Petitioner has not shown that this Court should hold an evidentiary hearing on this issue.

> "Under AEDPA, evidentiary hearings are not mandatory." *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir.2003). In fact, in determining whether to grant an evidentiary hearing to a habeas corpus petitioner, the district court must decide whether such a hearing would enable the petitioner to prove allegations that, if true, would entitle the applicant to federal habeas relief. See *Hartman v. Bagley*, 492 F.3d 347, 361 (6th Cir.2007), cert. denied, [554] U.S.[924], 128 S.Ct. 2971, 171 L.Ed.2d 897 (2008) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)).

*Johnson v. Mitchell*, 585 F.3d 923, 934-35 (6th Cir. 2009).  In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that his appellate counsel was ineffective for failing to raise the claims asserted in Petitioner's motion for relief from judgment.  Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutor's misconduct, failing to investigate, failing to perform an adequate cross examination and for failing to effectively argue against the prosecution's evidence.  Petitioner raised these issues in a motion for relief from judgment that was rejected by the trial court and affirmed by the Michigan appellate courts.  The trial court rejected the ineffective of assistance of appellate counsel claim for failing to assert that trial counsel should have requested additional funds for investigation.  The court found that Petitioner made no showing that any further investigation into the case by counsel "would have resulted in an alternative outcome, or even that the level of investigation undertaken wasn't a reasonable strategic choice."  Order Denying Defendant's Motion For Relief From Judgment And Request For A *Ginther* Hearing, docket #23-15 at 7.  The court further explained:

Taken in order, (1) Defendant offers no alternative explanation of cause of death - - the young, otherwise healthy victim was found with a bullet hole through his lungs and heart and indisputably died within moments of gunfire, seen or heard by at least a half-dozen witnesses to have been discharged near the victim's vehicle.

(2) Gerald Luedecking was sworn in as an expert without objection and presented evidence consistent with his area of expertise; the prosecution's failure to disclose more than a summary report of his planned testimony before trial (under MCR 6.201(A)(3)) is unlikely to have prejudiced the Defendant - especially given that his testimony was only tangentially related to identifying the Defendant as the shooter and its conclusions were challenged during closing statements.

(3) Defendant argues only that pre-trial evidentiary hearings would better inform decisions about the need to hire additional experts, the ability to challenge testimony and so forth, offering not even a theory of specific exculpatory outcomes that might emerge.

(4) Defendant presents no substantive evidence of an alternative to the presented ballistic theories (e.g. a second shooter, the shooter being in another location, or something similar), begging the question as to what he thought his pre-trial attorney might have argued had he prepared as Defendant suggests - or for that matter, whether the absence of any ballistics testimony, had it been prohibited, might have led to another outcome, given that the ballistics evidence played little role in implicating the Defendant.

(5) Defendant raises excellent points about pitfalls of eyewitness testimony, however, it is unclear how it would help the Defendant to have an expert explain those pitfalls to a jury when Defendant  is located at the scene by video camera footage and his brother - and identified as the shooter by witnesses who knew his identity before that night (video evidence also corroborates testimony that he was the shooter).

(6)  Mary Hamilton, a res gestae witness, claimed to have seen another shooter that allegedly came across (or shot across) the AutoZone parking lot that was full of people running away, at that time, from a shooter caught on video tape.  Defendant cites Romonez v. Berghuis, 490 F.3d 482. 489 (6th Cir. 2007): 'When defense counsel is made aware that a potential witness may provide testimony that is beneficial to the defense, counsel's failure to interview the potential witness is ineffective.'  While unclear as to why, or what

- 16 -

extent Defendant's trial attorney failed to investigate this witness, we must consider the possibility that counsel determined that her testimony would not be beneficial to the case. The fact that her testimony was contrary to the testimony of all other witnesses, including those against whom the Defendant alleges no bias (see below), and inconsistent with physical evidence, the court cannot rule out the possibility that this decision was strategic (ie: Mary Hamilton may have been an entirely unreliable witness that a reasonable attorney might conclude would undermine a client's case).

Defendant cites Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir. 1992), which holds: "[w]here counsel fails to investigate and interview promising witnesses, and therefore has no reason to believe they would not be valuable in securing defendant's release, counsel's inaction constitutes negligence, not trial strategy." But this case is distinguished from Workman in three important ways: 1) the issue at stake in that case involved ineffective assistance of trial counsel for failing to call useful witnesses, not ineffective assistance of appellate counsel for failing to argue this issue with regard to trial counsel; 2) the witnesses were the only people present for the situation at stake in that case, other than the defendant and the police with whom the Defendant scuffled; 3) the trial attorney failed to investigate these witnesses after defendant in that case informed his lawyer about those two witnesses and provided contact information.  While defendant implies in his brief that any failure to call a witness constitutes an error, Cathron v. Jones, 77 F. App'x. 835, 839 (6th Cir. 2003) demonstrates that this is not true: "as the Michigan Court of Appeals concluded, [failing to call two alibi witnesses to testify] was reasonable trial strategy given the weakness in the alibi witnesses' testimony and credibility."

Defendant also includes in this argument the failure of counsel during the pre-trial phase to further investigate initial statements by a victim in the shooting who was also a witness for the prosecution, William Palm. Palm told police at the hospital that he had no idea what happened, didn't know anyone, and had no idea who was shooting or how many guns there were; at trial he testified that he did know what was going on and saw Defendant with the gun, also testifying that he played dumb at the hospital out of a commonplace instinct among those in his community. Palm's inconsistencies were addressed at trial, and the final version given was consistent with all the other eye-witness accounts. That inconsistency does not amount to unexplored testimony that would call into question other information exposed at trial and therefore, neither Palm's hospital statements, nor those of

Ms. Hamilton, warrant the finding of ineffective assistance of counsel during the pre-trial phase.

With regard to counsel at trial, Defendant contends that appellate counsel should have argued additional issues to support the claim of ineffective assistance of counsel. Those issues fall into three categories: failure to object to prosecutorial misconduct; failure to effectively cross-examine; and failure to present adequate defenses.

In his motion, Defendant insists that appellate attorney should have also included in his argument for ineffective assistance of trial counsel the following regarding prosecutor misconduct: 1) prosecution's failure to provide criminal backgrounds of key witnesses along with any deal that the prosecutor may have struck with those witnesses, thereby denying counsel's ability to mount effective defenses; 2) prosecution's failure to provide a full report of Gerald Luedecking's planned testimony, thereby preventing counsel from preparing for effective cross-examination; 3) prosecution's failure to alert defense to the expert status of Gary Latham; 4) counsel's failure to object to prosecution's refusal to run tests on the presence of gunshot residue on the vehicle used in the shooting; and 5) prosecution's introduction of the phrase 'code of silence' to describe the pervasive unwillingness among those at the scene of the crime to testify, when 'code of silence' was not already in evidence.

Taking those issues in reverse, Defendant's 'code of silence' argument fails under 6.508(D)(2), barring the rearguing of issues already addressed: '[t]he court may not grant relief to the defendant 'if the motion...alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding.' Appellate counsel did argue on appeal that the prosecution's use of 'code of silence' was improper evidence and the court found that, taken in context, it served as an explanation for changing witness testimony and was subsequently acknowledged by witnesses under oath, and thereby placed in evidence.

As for the failure to run tests on the presence of gunshot residue around the hole found in the rental vehicle used by the Defendant to travel to the crime scene and eventually back to Detroit, the trial counsel had reasonable strategic grounds not to object: as Defendant states in his Motion, the vehicle had been wiped down at least twice with Armor All cleaner, giving the prosecution a good argument for avoiding the cost and time of running such a test. Additionally, given that the prosecution's ballistics expert testified to his unequivocal belief that the hole was caused by a bullet, there is a strong

probability that the running of such a test would be of no aid to the Defendant, even if nothing was found.

Gary Latham was listed by the prosecution in pre-trial court documents as an anticipated witness. Given his employment as a crime lab specialist with the Kalamazoo Department of Public Safety, it is likely that he would offer expert testimony regarding evidence already on the record. This likelihood renders it difficult to conclude that the trial attorney did not make a strategic choice in refusing to object to any failure to provide his resume as an expert under MCR 6.201(A)(3). It is all the more impossible to rule out strategy with regard to the appellate counsel's decision not to incorporate the trial attorney's non-objection into the appellate argument for ineffective assistance of trial counsel. In any case, MCR 6.201(J) allows the court discretion on how it treats violations of MCR 6.201, with the likely remedy, had there been an objection, being that Defendant would be provided with Mr. Latham's resume – a result unlikely to have influenced the outcome of the case.

The issue regarding Gerald Luedecking is very similar to the Gary Latham situation. Defendant alleges another violation of 6.201(A)(3), this time regarding the lack of a summary of the planned testimony of the prosecution's witness (though the ballistics report upon which he testified was in evidence). What distinguishes this claim from the previous one is that the prosecution's failure to provide Defendant's counsel with planned testimony is substantially more prejudicial than the failure to provide Defendant with the resume of someone likely to be called as an expert witness and surely to be recognized by the court as one.

Unfortunately, Defendant does not return to this complaint in his analysis, or provide relevant case law (he does return to Luedecking regarding the court's allowance of testimony, addressed below). While arguably a disadvantage to Defendant for his counsel to lack a description of the witness's planned testimony, it is unclear how any prejudice rises to the level that would call the verdict into question; as with Latham, had there been an objection it likely would not have barred any testimony about the ballistics report (Luedecking could testify without offering expert opinion), and in any case, that testimony only corroborated witness testimony and video evidence that indicated shots were fired from Defendant's rental car into the victim's car, and speculated on the type of gun used, which was not a factor in identifying the Defendant as the shooter. As the Sixth Circuit observed in <u>Brown v. Smith</u>, 551 F.3d 424, 435 (6th Cir. 2008), the greater the evidence of guilt – in this case almost entirely

exclusive of Luedecking's testimony – the higher the bar for proving ineffective assistance of counsel.

There is little to suggest that denying Luedecking the ability to testify as a witness would have any impact on the outcome, or that counsel's failure to object was not, for this reason, a strategic choice.

The prosecution's failure to reveal in discovery the criminal records of some of its witnesses and any possible deal offered for testimony is probably the strongest argument made by Defendant. While this could fall into appellate counsel's failure to challenge prosecutorial misconduct (considered next), Defendant argues this omission denied effective counsel at the trial level, and is therefore considered here.

The Defendant claims the prosecution withheld requested criminal background information on William Palm, Roneca Echols and Mr. Harris, including a deal with Palm to reduce his sentence in another matter if he agreed to testify. Defendant rightfully argues that this is a violation of MCR 6.201(A)(4) and (5), as well as MCR 6.202(B)(5). Parties are encouraged to bring such violations to the court's attention as early as possible, as the remedies are restricted to the trial court's discretion. "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." People v. Banks, 249 Mich. App. 247, 252, 642 N.W.2d 351, 355 (Mich. Ct. App. 2002). Obviously, the trial court was unable to make this consideration as the Defendant was unaware of the omission until after trial.

Defendant alleges a Brady violation, established in Brady v. Maryland, 373 U.S. 83 (1963), where a Defendant was found to have his Due Process rights violated because the prosecution suppressed the confession of another. Here, the prejudice suffered is much less clear, and the standard for proving a Brady violation is restrictive. "In order to establish a Brady violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." People v. Lester, 232 Mich. App. 262, 281, 591 N.W.2d 267, 276 (Mich. Ct. App. 1998).

In the present case, knowledge of the criminal records and the deal with Palm would likely be "favorable [sic] to the Defendant.

- 20 -

On the second test, the Defendant could have consulted public records to find out if the witnesses had criminal charges brought against them, which might have led to specific questions about any deals. The third test cannot be applied, as there is no evidence as to why the prosecutor failed to comply with MCR 6.201(A)(4) and (5). This could be investigated through requesting a response from the prosecutor, were it not for the fourth test.

At least two witnesses with no criminal background corroborate the most damning testimony of those with a record, as does the video shot form store surveillance cameras. It is not reasonable to conclude that had the defense been able to present the criminal backgrounds of the witnesses, the outcome would have been different. Indeed, had the witness never testified at all – which is not the test under Lester – it is still not reasonably possible that the trial would have come out differently. Also see People v. Leatherman, 252679, 2005 WL 1540479 (Mich. Ct. App. June 30, 2005)(reversal is not required because the prosecutor's failure to disclose the records did not affect defendant's substantial rights).

**Failure to Address Prosecutor Misconduct**

Many of the alleged incidents of prosecutorial misconduct that Defendant alleges his appellate counsel should have addressed are intertwined with the arguments for ineffective assistance of counsel at the trial level, and have been addressed above. Remaining are the following issues: 1) the prosecutor put forward false evidence to the jury by stating that "both Tirrel Thomas and William Palm spoke to the police about what happened," thereby implying cooperation; 2) the prosecutor put forward false evidence to the jury by stating that no one "came forward to the police to report what happened...not a single person"; 3) the prosecutor put forward false evidence to the jury by stating that "the only person who had control over that red Durango from the beginning to end is that man sitting right here"; 4) the prosecutor put forward false evidence to the jury by stating, "remember...Tracy Cochran found pieces of those shell casings in the interior of the Durango."

(1) The Defendant argues that because police had to seek out Thomas and Palm, it misled the jury to say Thomas and Palm "spoke to police." The statement does not require voluntary speaking, and even if it did the Court fails to see substantive prejudice.

- 21 -

(2) The Defendant argues that Mary Hamilton did come forward and that there was a witness present when one Public Safety officer arrived. While the later witness was asked by the officer to clear the scene, and could not be considered "coming forward," we will assume for the sake of argument that Hamilton did come forward and that the statement to the jury is misleading. Disregarding what good the testimony of Hamilton would have done, as that has been addressed, there is no reason to believe that counsel was ineffective for failing to argue this point. It is difficult to construe even a weak argument holding that a statement by the prosecutor about the difficulty of finding witnesses somehow implicates the Defendant.

(3) Regarding the "control over the Durango," Defendant points out that it was in a rental parking lot in Detroit for days before investigators took charge of it (and rented out in the interim). But the context of the testimony in the trial transcript clearly suggests that the prosecutor is talking about the time Defendant admittedly arrived at the scene in that car to the time that the car left the scene. However, had the prosecutor intended to lead the jury to believe that the car had not been tampered with in between control by the Defendant and by investigators, the grounds for finding prejudice are slim. The only evidence testified to by the prosecution regarding the investigation of the car is a bullet hole in a small piece of molding by the window. While it is possible that one of the other renters of that car shot that bullet through the car, there is substantial evidence placing the shooter in the present case in that car (both video and eyewitness).

(4) The Defendant argues that there was no testimony that shells were found in the Durango by investigators. It is true that no shell casings were found in the red Durango driven by the defendant and subsequently re-rented before investigators took custody. But here the prosecutor was clearly speaking of a black Durango, also at the scene, which took on bullet damage and had bullet fragments found inside – not "pieces of...shells." This would seem [to be] an error in terminology so minor that it is unlikely that the jury interpreted any other meaning than the one that was intended, or at least the meaning that the given evidence corroborated.

*Id*. at 7-16.

Petitioner also makes a number of claims that his trial counsel was ineffective and that his appellate counsel should have raised these additional claims of ineffective assistance of trial counsel on direct appeal.  Petitioner included several claims of prosecutorial misconduct that trial

counsel failed to correct or make appropriate objections to the alleged misconduct.  The trial court rejected each of these claims as lacking merit and found that Petitioner failed to establish prejudice on each of his claims.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*  In the opinion of the undersigned, the trial court appropriately concluded that in each instance, Petitioner could not establish ineffective assistance of appellate counsel or ineffective assistance of trial counsel.  The Michigan court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the trial court violated his right to a fair trial and due process of law by admitting prejudicial evidence during his trial.  The Michigan trial court denied this claim explaining:

- 23 -

**The Court's Admission of Improper Evidence:**

The Defendant puts forward the following arguments: 1) the court allowed expert testimony from someone who was not established as an expert upon testifying, violating MCR 6.414(B) requirements and that he subsequently gave evidence he was unqualified to give and that failed the MRE 403 requirements; 2) Gary Latham's testimony should have been barred because it failed under MRE 702 to evaluate whether the testimony was based on sound principles and methods as applied to the facts. The Defendant also argues some issues that were sufficiently addressed earlier in this Opinion and Order.

(1) The court record does, in fact, show that one of the State's experts was not so sworn in. That expert testified about evidence found at the scene – where it was found, how police worked together to locate it, what was considered relevant and so on. Given that none of the testimony offered had much to do with implicating the Defendant, it is highly unlikely that the absence of his testimony would have changed the outcome. Indeed, the cure, had counsel objected would have been to establish him as an expert and allow him to go on as he had; there is no reason to believe that he would not qualify as an expert. The Defendant's claims regarding the testimony's violation of MRE 403 have to do with testimony of damage to the black Durango that was at the scene and not alleged to be operated at any time by the Defendant or either victim. The Defendant argues that this vehicle was not examined until well after the day in question and, therefore, the bullet damage found is not relevant under MRE 403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). While it is entirely possible that this evidence may have been excluded under objection, one of the grounds on which it could have been excluded undermines using this argument in alleging ineffective assistance of counsel: the testimony was ancillary – "needless" and a "waste of time" in proving the case. If the evidence was so ancillary, then its admission could not conceivably have led to a different outcome and therefore the failure to raise this issue on appeal cannot support grounds for ineffective assistance of counsel.

(2) Here the Defendant argues that the court never made a determination as to whether Mr. Latham's testimony was based on sound scientific principles. Latham testified establishing the Defendant's guilt. The Michigan Court of Appeals has established what kind of inquiry is required of the court, and it appears that

- 24 -

absent sound objection from one of the parties, that requirement is only the standard establishment that the witness is qualified to give the testimony (as was the case with Latham in Defendant's trial): "the trial court's role as gatekeeper does not require it to search for absolute truth, to admit only uncontested evidence, or to resolve genuine scientific disputes. The facts that an opinion held by a properly qualified expert is not shared by all others in the field or that there exists some conflicting evidence supporting and opposing the opinion do not necessarily render the opinion 'unreliable.' A trial court does not abuse its discretion by nevertheless admitting the expert opinion, as long as the opinion is rationally derived from a sound foundation." Chapin v. A & L Parts, Inc., 274 Mich. App. 122, 127, 732 N.W.2d 578, 580-81 (Mich. Ct. App. 2007).

The Defendant makes two allegations regarding Latham's testimony: 1) Latham showed video that he had transferred from video tape to DVD, and subsequently edited into distinct clips or DVD tracks for easy indexing and courtroom replay, which the Defendant argues violated MRE 1004 (he also argues possible violations of MRE 401 and 403); 2) Latham testified to what he believes can be seen on the video, while Defendant argues that the video isn't clear enough for Latham to draw such conclusions, violating MRE 702(3).

Looking at the first issue, Defendant raises MRE 1004, which states that "evidence of the contents of a...recording...is admissible if the original was lost or destroyed," and contends that because the original from which the video was taken (the camera recordings at the location of the incident), they must be what is used for the jury. People v. Davis would tend to support the Defendant's "best evidence" argument insofar as that court found that rerecorded material failed under MRE 1004. 281505, 2009 WL 638193 (Mich. Ct. App. Mar 12, 2009) appeal denied, 485 Mich. 1052, 777 N.W.2d 141 (2010). But there are two important distinctions between the cases. The first is that in Davis, it was the absence of the time stamps found on the original video recordings that most prominently figured into the conclusion that what was shown to the jury was not the original (that the lack of originality was content based, not format based); in the Defendant's trial, however, the video shown was exactly what appeared on the video tapes, including the liquor store's inaccurate time stamp.

The second distinction is that the Davis court based its decision on the fact that the originals were not entered into evidence: "Given that the 'original' videos were admitted into evidence, it logically follows that the videos were not 'lost or destroyed,' and thus, pursuant to the

best evidence rule, only the videos themselves could be used to prove the content of the videos.'" 281505, 2009 WL 638193. In this case, it appears that the originals – the DVRs inside the liquor store equipment – were copied at the site and not entered into evidence. Consequently, the video shown to the jury was arguably the "best evidence" available in evidence. The MRE 401 and 403 arguments are baseless; the video evidence was plainly relevant (401) and its probative value is inarguable (403) as becomes more clear below. The appellate counsel's failure to raise the trial court's admission of this evidence does not constitute ineffective assistance of counsel.

With regard to the second issue (Latham's testimony regarding what he believes he saw on the low-resolution video), the Defendant cites Latham's refusal to state the color of a shirt (because he claimed camera settings can make that deceptive) as impeaching all video testimony under MRE 702(3)(witness must apply principles and methods reliably to the facts of the case). Yet, Defendant presents no argument to explain why camera settings that could affect color quality necessarily impeach a video expert's conclusions regarding light and dark, or shapes.

The specific testimony that Defendant is attempting to impeach is Latham's statement that he believes the flash coming from the extended arm of someone matching the exact appearance of Defendant was consistent with a "muzzle flash" (Defendant's appearance was established by Defendant's brother from earlier, well-lighted video taken from the same night). The Defendant's problem here is that if the video is admissible and Latham is a video expert (Defendant does not question his credentials), then that testimony is okay under the Davis rule stated above: "the trial court's role as gatekeeper does not require it to search for absolute truth...that there exists some conflicting evidence supporting and opposing the opinion do not necessarily render the opinion 'unreliable.'" 281505, 2009 WL 638193. Indeed, the Defendant's attorney went on at length in her closing statements to remind the jury that an expert's opinion is not a fact, and that the jurors should interpret the evidence they've seen using their own judgment. And even had Latham's testimony been struck, the video shows the Defendant walking with his arm outstretched into a crowd of people as they start running away – at exactly the time when everyone at the scene called to testify said that someone started shooting (except for Defendant's brother, who may have been unconscious at the time). The failure of the appellate counsel to raise the trial court's allowance of this testimony cannot constitute ineffective assistance of counsel.

- 26 -

Order Denying Defendant's Motion For Relief From Judgment And Request For A *Ginther* Hearing, docket #23-15 at 16-20.

Petitioner argues that the trial court improperly admitted evidence in violation of the Michigan court rules. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Petitioner contends that the trial court abused its discretion when it admitted evidence where the probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the

denial of fundamental fairness, and therefore, a violation of due process.  *Brown, III v. O'Dea*, 187

F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial
> evidence constitutes a denial of fundamental fairness is whether the
> evidence is 'material in the sense of a crucial, critical highly
> significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir.
> 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir.
> 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.  In this case, the trial court properly considered the evidence

and made appropriate rulings that did not violate Petitioner's rights.  Further, the opinion of the state

court in denying Petitioner's motion for relief from judgment on these issues was reasonable.  Most

importantly, the Michigan Court of Appeals' decision did not result in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or result in a decision that was based upon an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and

therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a

certificate of appealability be denied as to each issue raised by Petitioner in this application for

habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate

of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of

a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/   TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 2, 2015

- 29 -